DISTRICT OF OREGON: ss,   AFFIDAVIT OF BOBBY GUTIERREZ

## Affidavit in Support of a Criminal Complaint

I, Bobby Gutierrez, being first duly sworn, hereby depose and state as follows:

## Introduction and Agent Background

1.   I am a Special Agent with the Federal Bureau of Investigation and have been since January 2021.  I am currently assigned to the FBI's Portland Division and am part of the Transnational Organized Crime and Violent Gang Squad.  I presently work a variety of criminal and national security matters, including the investigation of violent crimes, gangs and narcotics, in addition to the apprehension of federal fugitives.  During my 21-week training at the FBI Academy in Quantico, Virginia, I received training in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause.  In my current area of responsibility, I work with law enforcement officers who have experience and training in investigating coded communication involving the distribution of controlled substances and gang affiliations.  I have used this training and experience, as well as the training and experience of other law enforcement officers familiar with this investigation, to demonstrate how these criminal enterprises plan, organize and carry out criminal activity.

2.   Prior to being employed with the FBI, I was a Licensed Master Social Worker (LMSW) in the state of Arizona for approximately six years.  As a LMSW, I was responsible for creating and implementing target treatment plans for court-ordered criminal offenders with a chronic history of substance use disorders, domestic violence, and child abuse.  In addition to my employment as an LMSW, I was a behavioral health consultant for Medicare/Medicaid and oversaw medical and mental health treatment for patients residing in assisted living homes and

skilled nursing facilities. As a consultant, I was responsible for auditing medical treatment plans, levels of care, and medications to include psychotropic and Schedule II narcotic pain medications.

  3. This affidavit is based upon a joint investigation conducted by the Clackamas County Interagency Task Force (CCITF), the Federal Bureau of Investigation (FBI), and the U.S. Attorney's Office.

### Purpose of Affidavit

  4. This affidavit is submitted to support a criminal complaint and arrest warrant for **Juan FERNANDEZ**, a Hispanic male, date of birth 01/xx/1988 (hereinafter referenced as "**Fernandez**") and **Alexander HERNANDEZ**, a Hispanic male, date of birth 11/xx/1999 for committing the crimes of Possessing with the Intent to Distribute 400 grams or more of a mixture and substance containing Fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A), and Conspiracy to Distribute and Possess with the Intent to Distribute a Controlled Substance (fentanyl), in violation of Title 21, United States Code, Section 846.

  5. I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and, from records, documents and other evidence obtained during this investigation. I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other related investigations.

### *Confidential Informant*

  6. A Confidential Informant, hereinafter referred to as CI, is working with the Clackamas County Interagency Task Force and has provided actionable information to law enforcement in exchange for consideration on their pending federal criminal charges involving the

Distribution of Fentanyl and Possession with the Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1), and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). No promises or guarantees were made by investigators to gain the CI's cooperation. The CI has an attorney. The CI has also provided information to CCITF against their own penal interests. The CI stated they had been involved in both using and selling drugs for more than ten years. The CI has misdemeanor and felony convictions for Unauthorized Use of a Vehicle, Possession of Stolen Vehicle, Manufacturing Heroin, Delivery of Heroin, Possession of Heroin, Theft II, and Offensive Littering. The CI has provided investigators information that they have been able to independently verify. Based on the above information, I believe the CI to be reliable to the extent he/she has been corroborated.

## Statement of Probable Cause

*Background on Investigation*

7.  In December 2023, CCITF investigators received a call from the CI to inform investigators that they had recently bought fentanyl powder and counterfeit M30 Oxycodone pills laced with fentanyl, a Scheduled II controlled substance, from a Hispanic male by the name of "Alex" (hereinafter "Alex") who was using telephone number (503) 312-2333 (hereinafter "Target Number"). CI said they had bought fentanyl from Alex approximately (6) other times within the past year. Per the CI, Alex was one of CI's known fentanyl drug dealers and the CI would buy approximately 2 ounces of fentanyl powder and 500 M30 fentanyl pills per each transaction.

8.  The CI called investigators to further inform them that they had recently tested positive (+) for opioids due to the fact that they had purchased from Alex and provided this information voluntarily with no promises in exchange. In sum, the CI offered their assistance in establishing a control buy to further investigate Alex and his drug trafficking organization (DTO).

**Affidavit of Special Agent Bobby Gutierrez**                                                                                          **Page 3**

*Control Buy*

9.  On December 14, 2023, at the direction of investigators, the CI sent a text message to Alex at the Target Number inquiring about drugs for purchase. The communications discussed herein include summaries of pertinent portions of the communication and are not necessarily the entire conversations between the parties involved. Below is a conversation between the CI and Alex that was captured on December 14, 2023:

| | |
|---|---|
| CI: | "Yo can I get 2 ounces and a boat" |
| CI: | "How much" |
| Alex: | "Who this" |
| CI: | "Bro" |
| CI: | "Its [*redacted*]" |
| Alex: | "Ok" |
| Alex: | "2300" |
| CI: | "Ok perfect" |
| Alex: | "the job I have is very good" |
| CI: | "Ok nice" |

10. Based on the conversation as well as my knowledge of the case, I believe Alex has the capacity and ability to complete a narcotic purchase given Alex's understanding of the coded language utilized above. I know from my training and experience that those involved in the sales and distribution of narcotics often utilize coded language in order to avoid detection by law enforcement. For example, when the CI inquired about "2 ounces" and a "boat," Alex was responsive to reply with a price of "2300" or $2,300. I know that in this conversation, a "boat" is reference to 1,000 pills, which I believe is reference for counterfeit M/30 Oxycodone pills. I also

know from my training an experience, that fentanyl powder is often sold in gram and ounces and then utilized to be smoked or injected intravenously. I also know that the price given by Alex "2300" is consistent with prices for both of the fentanyl powder and 1,000 M/30 pills. For example, 1,000 pills has an estimated street value of $800-$1,000 whereas fentanyl powder per the ounce has an estimated street value of $600-$800. In summary, (2) ounces at approximately $700 each totaling $1,400 and 1,000 M/30 pills at approximately $900 brings the grand total of $2,300.

11. After the set narcotic agreement above was set between the CI and Alex, investigators setup in a predetermined location in Clackamas County Oregon. At the direction of investigators, the CI provided this predetermined location to Alex to conduct the narcotics deal and Alex agreed. At approximately 11:14 p.m. Alex, using the Target Number, called the CI to inform them that they were at the agreed upon location. After the call ended, investigators approached the vehicle that had just arrived at the predetermined location with their lights and sirens. When the vehicle was approached by investigators, two (2) Hispanic males jumped out the vehicle and attempted to flee but were detained.

12. The driver was identified as **Alexander HERNANDEZ** (hereinafter "Hernandez") and the passenger was **Juan FERNANDEZ** (hereinafter "Fernandez"). Both were arrested and read their *Miranda* rights in Spanish using the FBI form FD-395.15 "Notificacion de Derechos" which translates to "Advice of Rights" in English. I am Native Spanish speaker and I informed both Hernandez and Fernandez individually of these rights and they both asked for an attorney.

13. While I obtained identifying information from both individuals, **Fernandez** declined to provide me his name and date of birth. I asked **Hernandez** for his identification and he informed me that that his name was "Alexander Rivas." I asked him if the vehicle which was

///

stopped by investigators was his and he told me it was. I asked **Hernandez** if he would consent for a search of the vehicle, which we had probable cause contained fentanyl, and he agreed.

14. Prior to searching the vehicle, Clackamas County Sheriff's Office Deputy Huskisson conducted a sweep of the vehicle belonging to Hernandez utilizing K-9 "Ajax" who then positively alerted to presence of narcotics.[1] A further search of the vehicle with the assistance of K-9 Ajax, revealed a positive alert to the glove compartment and two bags that were found in the vehicle. One bag was found on the passenger side floor (containing the majority of the pills) and the other bag (containing mainly powder) was found in the center console area. Upon this discovery, investigators proceeded with the search and began to process the scene. The following are images obtained from the search:




///

---

[1] Deputy Huskisson and "Ajax" have documented over 900 narcotic training hours. "Ajax" has been deployed in 140 sniffs, including search warrants, rooms, vehicles, luggage, and area searches. Ajax has had alerts and found evidence in 109 of those sniffs. The other 26 sniffs Ajax did not alert and there was no evidence found upon a hand search. There were also 5 sniffs where Ajax alerted but I was not able to confirm an alert. "Ajax" has proven himself to be reliable in finding hidden narcotics, including documented search warrants based on his alert and subsequent narcotics found. Ajax's field reliability rate is 97.54%.

**Affidavit of Special Agent Bobby Gutierrez**                                                                 Page 6



15. During the search of the vehicle, **Fernandez** asked investigators if someone had "set them up" in Spanish and I told **Fernandez** that I could not elaborate on the details and was there to provide language translation given that he had asked for his attorney. Upon the completion of the search, both **Fernandez** and **Hernandez** were taken into custody and the evidence was taken back for field testing, measurements, and processing at the Clackamas County Sheriff's Office evidence room.

16. Both the suspected fentanyl powder and M/30 fentanyl pills were separated, weighted and field tested using MobileDetect. Below is a list of items that were seize from the vehicle and photographs:

- M/30 fentanyl pills: Approximately 774 grams (Positive (+) for Fentanyl),
- Fentanyl powder: Approximately 453 grams (Positive (+) for Fentanyl and Xylazine),
- Approximately $4,101 in U.S.D.,
- Digital Scale with white residue





17.     After both subjects were placed into custody, the CI was provided photos of both **Hernandez** and **Fernandez**.  The CI positively identified both subjects as the pair who jointly distributed fentanyl to the CI on prior deals and that **Hernandez** operated as the driver and that **Fernandez** was the male the CI knows as "Alex" and who the CI has communicated with in the past and was the one who would provide the fentanyl to the CI.  Inside the vehicle we found the

phone that the CI was communicating with. We called the number the CI had been communicating with and the phone inside the vehicle rang.

18. I am very familiar with how fentanyl dealers operate and I know that fentanyl traffickers are increasingly selling both bulk fentanyl powder, as well as counterfeit M/30 prescription pills that are manufactured with fentanyl, a Schedule II controlled substance. I know that fentanyl powder is typically a white to off-white powder. I also know that the counterfeit pills being sold are designed to replicate real 30 mg Oxycodone pills, which are round, often blue in color, and stamped with an "M" and "30" on them and weigh approximately 1/10th of a gram. I have seen and been involved in the seizure of tens of thousands of these counterfeit M/30 pills and both field tests and forensic laboratory analysis conducted on samples of these pills have confirmed the presence of fentanyl within them. I know a typical user of fentanyl will either buy powdered fentanyl or counterfeit M/30 pills that they will then burn on a piece of aluminum foil and inhale the fumes. Sometimes a user will simply ingest the pills or inhale the powdered fentanyl as is. Since different weights of powdered fentanyl sell for different amounts, I know that drug dealers selling fentanyl powder will often possess a scale to weigh the amount of powder fentanyl they are selling. I also know drug dealers selling powdered fentanyl, which they possess in bulk/larger amounts, will often possess additional packaging materials to repackage the drugs they are selling to their customer. These M/30 pills can sell on the street to a user for as little as .25 cents to .50 cents a pill. Depending on their level of addiction, I know that a typical fentanyl user buying pills may buy and use between one (1) and 20 pills a day, and sometimes more. I know that a user of powdered fentanyl will typically buy it in quantities of less than a gram and use it in quantities of much less than 1/10 of a gram. I also know that dealers of pills will often buy pills in bulk quantities and then repackage the pills into smaller quantities. I know that dealers

of powdered fentanyl will often buy fentanyl in larger quantities and then break off and sell it in smaller qualities of a gram or less. I know that a person possessing over 10 grams of either fentanyl pills (counterfeit M30 pills manufactured with fentanyl) and/or fentanyl powder does not possess it for personal use but rather such a quantity clearly indicates that it is possessed for purposes of further distribution.

19. I know from my training and experience, that more and more illicit drugs are beginning to get mixed with Xylazine. I know that from my training and experience that Xylazine is not a scheduled drug in the United States, as it is not approved for the use on humans. Xylazine is a drug used for sedation, anesthesia, muscle relaxation, and analgesia in animals such as horses, cattle, and other non-human mammals. Because Xylazine is not an opioid, opioid reversal drugs such as naloxone (Narcan) during an overdose, does not reverse the effects of Xylazine intoxication. I know from training and experience that other drugs such as cocaine, heroin, and fentanyl can be mixed with Xylazine, either to enhance drug effects or increase street value by increasing their weight. In summary, Xylazine and fentanyl drug mixtures place users at a higher risk of suffering a fatal drug poisoning as the user is often not aware that it is laced.

## Conclusion

20. Based on the foregoing, I have probable cause to believe, and I do believe, that **Juan FERNANDEZ** and **Alexander HERNANDEZ** have committed the crimes of Possessing with the Intent to Distribute 400 grams or more of a mixture and substance containing Fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A) and Conspiracy to Distribute and Possess with the Intent to Distribute a Controlled Substance (fentanyl), in violation of Title 21, United States Code, Section 846. I

therefore request that the Court issue a criminal complaint and arrest warrant for **FERNANDEZ** and **HERNANDEZ**.

21.    Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Scott M. Kerin. AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
Bobby Gutierrez Special Agent
Federal Bureau of Investigation

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at  5:00 pm   on December  15 , 2023.

_____
HONORABLE JOLIE A. RUSSO
UNITED STATES MAGISTRATE JUDGE